**EXHIBIT A**

**ARENT FOX LLP**
Robert M. Hirsh (RH-5499)
George P. Angelich (GA-1108)
1675 Broadway
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Counsel for the Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MORGAN INDUSTRIES CORPORATION, <u>et al.</u>,[1] | ) | Case No. 12-21156 (MBK) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**AMENDED AND RESTATED PLAN OF LIQUIDATION FOR THE DEBTORS,
MORGAN INDUSTRIES CORPORATION, *ET AL.* PROPOSED BY THE DEBTORS**


Dated: September 24, 2012

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Morgan Industries Corporation (6758); Hunter Marine Corporation (7926); Hunter Composite Technologies Corporation (7001); Luhrs Corporation (3062); Mainship Corporation (7427); Ovation Yachts Corporation (1476); Salisbury 10 Acres, L.L.C. (1400); Salisbury 20 Acres, L.L.C. (3451); and Silverton Marine Corporation (6842).

# TABLE OF CONTENTS

**Page**

ARTICLE I   DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ............................... 1

    Section 1.1   Rules of Interpretation, Computation of Time, and Governing Law .................................................................................... 1

    Section 1.2   Defined Terms ..................................................................... 2

ARTICLE II   FEES, TAX CLAIMS, POST-PETITION SECURED CLAIM OF BANK OF AMERICA, AND PRIORITY CLAIMS .................................... 10

    Section 2.1   Introduction ...................................................................... 10

    Section 2.2   Administrative Claims in General ..................................... 10

    Section 2.3   Bar Date for Administrative Claims .................................. 10

    Section 2.4   Statutory Fees ................................................................... 10

    Section 2.5   Professional Fees ............................................................. 11

    Section 2.6   Priority Tax Claims .......................................................... 12

    Section 2.7   Priority Claims ................................................................. 12

ARTICLE III   CLASSIFICATION AND TREATMENT OF CLAIMS ............................. 12

    Section 3.1   Substantive Consolidation ............................................... 12

    Section 3.2   Summary .......................................................................... 13

    Section 3.3   Classification ................................................................... 13

    Section 3.4   Identification of Impaired Classes and Voting Rights ........................ 13

ARTICLE IV   INTER-DEBTOR CLAIMS ........................................................ 15

    Section 4.1   Inter-Debtor Waiver ........................................................ 15

ARTICLE V   EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...................... 15

ARTICLE VI   THE LIQUIDATING TRUST ....................................................... 17

ARTICLE VII   EFFECT OF CONFIRMATION ................................................... 23

    Section 7.1   Vesting of Assets ............................................................. 23

    Section 7.2   Authority to Effectuate Plan ............................................. 23

    Section 7.3   Binding Effect and Deemed Consent ................................ 23

    Section 7.4   Corporate Action and Dissolution of Debtors .................... 23

    Section 7.5   Dissolution of Committee ................................................ 24

    Section 7.6   Late Claims ...................................................................... 24

ARTICLE VIII   IMPLEMENTATION OF THIS PLAN ........................................... 25

-i-

# TABLE OF CONTENTS
(continued)

**Page**

Section 8.1   Cancellation of Instruments and Equity Interests ................................ 25

Section 8.2   Debtors' Books and Records ................................................................ 25

Section 8.3   Compromise of Controversies ............................................................. 25

ARTICLE IX   DISPOSITION OF REAL PROPERTY ..................................................... 25

Section 9.1   Contemplated Sales of the Salisbury Real Property ............................ 25

Section 9.2   Contemplated Sales of Certain Real Property ..................................... 26

Section 9.3   Surrender of the Palatka Real Property ............................................... 27

Section 9.4   Lease Proceeds .................................................................................... 27

ARTICLE X   RIGHTS OF ACTION ............................................................................... 27

Section 10.1   Maintenance of Rights of Action ....................................................... 27

Section 10.2   Preservation of All Rights of Action Not Expressly Settled or
Released ................................................................................................ 28

Section 10.3   Permissible Continuation of Actions ................................................... 28

ARTICLE XI   PROCEDURES FOR RESOLVING DISPUTED CLAIMS .......................... 28

Section 11.1   Prosecution of Objections to Claims .................................................. 28

Section 11.2   Estimation of Claims ......................................................................... 29

Section 11.3   Cumulative Remedies ........................................................................ 29

Section 11.4   Allowance of Claims .......................................................................... 29

ARTICLE XII   PROVISIONS GOVERNING DISTRIBUTIONS ...................................... 30

Section 12.1   Distribution to Creditors .................................................................... 30

Section 12.2   Claims Allowed as of the Initial Distribution Date ............................. 30

Section 12.3   Disputed Claim Reserve .................................................................... 30

Section 12.4   Time and Manner of Payments .......................................................... 30

Section 12.5   Delivery of Distributions .................................................................... 30

Section 12.6   Undeliverable Distributions ............................................................... 30

Section 12.7   Compliance with Tax Requirements ................................................... 31

Section 12.8   Time Bar to Payments ........................................................................ 32

Section 12.9   Fractional Dollars, De Minimis Distributions ..................................... 32

Section 12.10   Set-Offs and Recoupments ............................................................... 32

Section 12.11   Payments and Actions Not Required on Business Days ..................... 32

-ii-

# TABLE OF CONTENTS
(continued)

**Page**

ARTICLE XIII  CONDITIONS PRECEDENT TO CONFIRMATION AND
           EFFECTIVE DATE OF THIS PLAN ............................................................... 33

    Section 13.1  Conditions Precedent to Confirmation of Plan ..................................... 33

    Section 13.2  Conditions to Effectiveness of Plan ..................................................... 33

ARTICLE XIV  RETENTION OF JURISDICTION .................................................................. 34

    Section 14.1  Retention of Jurisdiction ..................................................................... 34

ARTICLE XV  MISCELLANEOUS PROVISIONS ................................................................. 36

    Section 15.1  Modification of Plan ............................................................................ 36

    Section 15.2  Revocation or Withdrawal ................................................................. 37

    Section 15.3  Injunction ............................................................................................ 37

    Section 15.4  Discharge ............................................................................................. 38

    Section 15.5  Term of Existing Injunctions or Stays ................................................ 38

    Section 15.6  Exculpation and Limitation of Liability .............................................. 38

    Section 15.7  Release ................................................................................................. 39

    Section 15.8  Subordination and Release of John and Warren Luhrs' Claims .......... 39

    Section 15.9  Section 1146 Exception ...................................................................... 39

    Section 15.10  Waiver of Taxes ................................................................................ 40

    Section 15.11  Evidence ............................................................................................ 40

    Section 15.12  Severability ........................................................................................ 40

    Section 15.13  Binding Effect ................................................................................... 40

    Section 15.14  Notices ............................................................................................... 40

    Section 15.15  Right to be Heard .............................................................................. 41

    Section 15.16  Closing of Case ................................................................................. 42

    Section 15.17  Section Headings ............................................................................... 42

    Section 15.18  Continuing Viability of Other Orders/Agreements ........................... 42

    Section 15.19  Entire Agreement ............................................................................... 42

    Section 15.20  Governing Law .................................................................................. 42

    Section 15.21  Failure of Bankruptcy Court to Exercise Jurisdiction ...................... 42

NYC/677679.13

The Debtors propose this amended and restated plan of liquidation pursuant to Section 1121(c) of the Bankruptcy Code.  This amended and restated plan of liquidation replaces and supersedes the plan filed on August 3, 2012 [Docket No. 317].

The Plan is a liquidating plan and does not contemplate the continuation of the Debtors' businesses.  The Debtors have substantially completed liquidating most, if not all, of their operating assets.  The Plan contemplates establishment of a liquidating trust to be administered by a liquidating trustee.  The liquidating trust will receive and liquidate or dispose of the Debtors' remaining assets, which consist primarily of several parcels of real estate, and make distributions pursuant to the Plan.  The Liquidating Trustee will, among other things, be responsible for the (a) Claims resolution process, (b) distribution to holders of Allowed Claims, (c) pursuit of objections to, and requests for estimation of, Claims against the Debtors, (d) payment of amounts due under the Plan, and (e) managing the wind down process of the Debtors including the sale or abandonment of remaining assets and the dissolution of the Debtors, and the filing of final tax returns, and (f) investigation and pursuit of Avoidance Actions.

In conjunction with this Plan, the Debtors will file a Disclosure Statement.  Reference is made to the Disclosure Statement for a discussion of the Debtors' history, financial condition and assets, the Debtors' Chapter 11 cases, and for a summary and analysis of the Plan.  All creditors are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.  The provisions of the Plan shall control over any inconsistencies contained in the Disclosure Statement or elsewhere.  After the Effective Date, the Bankruptcy Court will retain jurisdiction with respect to certain matters, as more fully described herein and in the Plan, that relate to, among other things, the Liquidating Trust.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

**Section 1.1** *Rules of Interpretation, Computation of Time, and Governing Law*

(a)    For purposes of the Plan: (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine, or neuter gender, shall include the masculine, feminine, and the neuter gender; (ii) any reference in the Plan to a contract, instrument, release, or other agreement or document to be prepared or executed, being in a particular form or on particular terms and conditions does not require that such document be identical to such description, but rather means that such document shall be substantially in such form or on such terms and conditions, as determined in the sole discretion of the Debtors, unless specifically required by the Plan to be in a form or in substance acceptable to Bank of America; (iii) any reference in the Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified, or supplemented (unless explicitly stated otherwise); (iv) the rules of construction set forth in 11 U.S.C. § 102 shall apply; (v) any term used but not defined herein shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (vi) unless otherwise

specified, all section, schedule or exhibit references in the Plan are to the respective section in, article of, or schedule, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time; and (vii) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

(b)       In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply, provided, however, the Debtors and Bank of America may agree to extend the timelines proscribed by Bankruptcy Rule 9006(a) by an agreement signed by the Debtors and Bank of America.

(c)       Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey.

## Section 1.2    *Defined Terms*

The capitalized terms used in the Plan have the respective meanings set forth below.

Administrative Claim: A Claim, including, but not limited to Professional Fee Claims, entitled to payment as an administrative expense as specified in 11 U.S.C. § 503(b)  that is entitled to priority under 11 U.S.C. § 507(a)(1) and (2), which Claim must be filed by the Administrative Claim Bar Date or the Professional Fee Claim Bar Date, as applicable.

Administrative Claims Bar Date: For all Administrative Claims, except Professional Fee Claims, arising on or after the Petition Date through July 31, 2012, August 17, 2012 at 4:00 p.m. (prevailing Eastern Time) pursuant to the Court's order entered July 11, 2012 [Docket No. 275]. For all Administrative Claims, except Professional Fee Claims, arising after July 31, 2012, the first business day that is thirty (30) days following the Effective Date.

Administrative Claims Escrow: An escrow account held by Debtors' counsel and comprised of funds sufficient to pay all Administrative Claims, excluding Professional Fee Claims, in full on the Confirmation Date, and funded by proceeds from the sale under the Sale Order.

Alachua Real Property: The Debtors' interest in real property located at 14700 NW US Highway 441, Alachua, FL.

Allowed: means, with respect to any Claim against the Debtors, (a) a Claim allowable under 11 U.S.C. § 502(a), (b) any Claim against any Debtor that has been listed by the Debtors in the Schedules (as such Schedules may be amended from time-to-time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed or no timely objection to allowance or request for estimation has been interposed, (c) any timely filed proof of Claim as to which no objection has been or is interposed in accordance with Section 11.1 of the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules,

or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder of such Claim, (d) any Claim expressly allowed by a Final Order or under the Plan, (e) any Claim that is compromised, settled, or otherwise resolved pursuant to a Final Order of the Bankruptcy Court. "Allowed Administrative Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Claim from and after the Petition Date. In addition, for purposes of determining the amount of an Allowed Claim (other than a Claim specifically Allowed under the Plan), there shall be deducted therefrom an amount equal to the amount of any claim that the Debtors may hold against the Creditor.

Allowed Claim: means an Allowed Claim in the particular Class or category specified.

Asset Purchase Agreement: Collectively, the asset purchase agreements approved by the Bankruptcy Court pursuant to the Sale Order and attached as Exhibits A, B, and C to the Sale Order.

Assets: Any and all real or personal property of any nature, tangible or intangible of the Bankruptcy Estates, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, cash equivalents, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Rights of Action, and any other general intangibles of the Debtors, as the case may be, of any nature whatsoever, including, without limitation, any and all property in which the Debtors have an interest within the meaning of 11 U.S.C. § 541.

Avoidance Actions: Any and all rights to avoid and recover transfers under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, 11 U.S.C. §§ 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, or 553, to avoid any lien under 11 U.S.C. § 506(d), or otherwise to exercise the avoidance powers provided under the Bankruptcy Code.

Bank of America: Bank of America, N.A.

Bank of America Funding Commitment Amount: The amount Bank of America has agreed to fund on account of (a) the Allowed Administrative Claims, excluding Professional Fee Claims and the Post-Petition Secured Claim of Bank of America, (b) Allowed Priority Claims, (c) Allowed Priority Tax Claims, and (d) Allowed Professional Fee Claims. The Bank of America Funding Commitment Amount shall be capped at (a) $150,000 for Allowed Administrative Claims, excluding Professional Fee Claims and the Post-Petition Secured Claim of Bank of America, Allowed Priority Claims, and the Allowed Priority Tax Claims; and (b) the amount set forth in the DIP Facility budget for Allowed Professional Fee Claims.

Bankruptcy Code: Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, together with all amendments and modifications.

Bankruptcy Court: The United States Bankruptcy Court for the District of New Jersey, in which these Chapter 11 Cases are pending, or in the event such court ceases to exercise jurisdiction over the Chapter 11 Cases, such other court or adjunct thereof that exercises jurisdiction over the Chapter 11 Cases.

Bankruptcy Estates: The estates created on the Petition Date pursuant to 11 U.S.C. § 541.

Bankruptcy Rules: The Federal Rules of Bankruptcy Procedure, together with all amendments and modifications to the extent applicable to these Chapter 11 Cases, and the General, Local, and Chambers Rules of the Bankruptcy Court.

Bar Date: July 30, 2012, at 5:00 p.m. (prevailing Eastern Time), the date fixed by order of the Bankruptcy Court as the date by which all proofs of claim with the exception of Administrative Claims and those asserted by governmental entities (as defined in the Bankruptcy Code) were required to be filed against the Debtors.

Business Day: Any day except Saturday, Sunday, or any legal holiday expressly set forth in Bankruptcy Rule 9006(a).

Cash: Cash and cash equivalents, including, but not limited to, bank and other deposits, wire transfers, checks, and readily marketable securities, instruments, and obligations of the United States of America or agencies or instrumentalities thereof.

Chapter 11 Cases: The Debtors' bankruptcy cases currently under Chapter 11 of the Bankruptcy Code, commenced by Debtors' voluntary petition for reorganization filed on the Petition Date and jointly administered under Case No. 12-21156 (MBK) in the Bankruptcy Court.

Claim: All claims, as defined in 11 U.S.C. § 101(5), against the applicable Debtor, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, including, without limitation, all claims arising from that Debtor's rejection of an executory contract or unexpired lease.

Claimant: An entity that holds a Claim against the Debtors that arose at the time of or before the Petition Date, or an entity that has a Claim against the Bankruptcy Estates of a kind specified in 11 U.S.C. §§ 348(d), 502(f), 502(g), 502(h), or 502(i).

Class: A category of Claims as set forth in Article III of this Plan pursuant to 11 U.S.C. § 1122.

Closing Date: [August 1, 2012], the date upon which the Debtors sold substantially all of their operating assets pursuant to the Sale Order and Asset Purchase Agreement.

Committee: The Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases by the Office of the US Trustee pursuant to 11 U.S.C. § 1102 on or about May 17, 2012.

Confirmation Date: The date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

Confirmation Hearing: The hearing at which the Bankruptcy Court considers confirmation of the Plan and approval of the Disclosure Statement.

Confirmation Order: The order entered by the Bankruptcy Court confirming the Plan pursuant to 11 U.S.C. § 1129.

Debtors: Morgan Industries Corporation (case no. 12-21156); Hunter Marine Corporation (case no. 12-21167); Hunter Composite Technologies Corporation (case no. 12-21162); Luhrs Corporation (case no. 12-21190); Mainship Corporation (case no. 12-21198); Ovation Yachts Corporation (case no. 12-21208); Salisbury 10 Acres, L.L.C. (case no. 12-21213); Salisbury 20 Acres, L.L.C. (case no. 12-21219); and Silverton Marine Corporation (case no. 12-21221).

Debtors-in-Possession: The Debtors, after the Petition Date and until the Effective Date.

DIP Facility: The credit facility obtained by the Debtors pursuant to the DIP Order and defined in the DIP Order.

DIP Order: The final order authorizing the Debtors to obtain postpetition financing, entered on July 10, 2012 [Docket No. 271].

Disallowed: A Claim as to which a Final Order has been entered disallowing the Claim or a portion thereof.

Disclosure Statement: The disclosure statement proposed in connection with the Plan, as approved by the Bankruptcy Court pursuant to 11 U.S.C. § 1125 and Bankruptcy Rule 3017, and as modified and amended, including all exhibits and attachments thereto.

Disputed Claim: Any Claim (a) listed on the Schedules as disputed, unliquidated, or contingent, (b) filed pursuant to 11 U.S.C. § 501(a) as unliquidated or contingent, (c) as to which the Debtors, or any party in interest with standing, has interposed a timely objection or request for estimation or subordination or other equitable relief in accordance with the Bankruptcy Code and the Bankruptcy Rules that has not been determined by Final Order, or (d) which differs from the nature or amount of the Claim in the Debtors' Schedules and the period within which to object has not yet expired.

Disputed Claim Reserve: Any Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims, which shall be held in a segregated account by the Liquidating Trustee.

Distribution: A payment by the Liquidating Trustee to a Holder of an Allowed Claim.

Distribution Date: A date on which a Distribution occurs.

Effective Date: The later of (a) the first day after the Confirmation Order becomes a Final Order, (b) the fifteenth day following the Confirmation Date or, in the event of a stay of the Confirmation Order, the first Business Day after such stay is terminated, and (c) the date upon which all the conditions specified in Section 13.2 of the Plan have been satisfied or waived in accordance with Section 13.22 of the Plan.

Entity: Entity shall have the meaning ascribed in 11 U.S.C. § 101(15).

Equity Interests: Any equity interest in the Debtors, including, but not limited to, all issued, unissued, authorized, or outstanding shares or stock, together with any warrants, options or contract rights to purchase or acquire such interests at any time and all rights arising with respect thereto.

Estates: Any reference to Estates shall mean the Bankruptcy Estates.

Final Decree: An order entered by the Bankruptcy Court closing the Bankruptcy Cases.

Final Distribution: The last Distribution to be made by the Liquidating Trustee upon the full administration of the Liquidating Trust Assets.

Final Order: An unstayed order or judgment of the Bankruptcy Court or other court having jurisdiction over any matter, provided that such order would be considered "final" for the purposes of section 158(a)(1) of Title 28 of the United States Code, and provided that such order has not been reversed, stay, or vacated, that the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired, and that no appeal, petition for certiorari, or other proceeding seeking a new trial, re-argument, or rehearing is pending, or, if an appeal, writ of certiorari, new trial, re-argument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest Court to which such order or judgment was appealed, certiorari shall have been denied, or a new trial, re-argument, or rehearing shall have been denied.

Governmental Bar Date: October 29, 2012 at 5:00 p.m. (prevailing Eastern Time), the last day upon which governmental entities may file proofs of claim.

Holder: An Entity holding a Claim or any authorized agent who has completed, executed, and delivered a Ballot in accordance with the applicable voting instructions.

Impaired: A Claim or Class of Claims that is impaired within the meaning of 11 U.S.C. § 1124.

Initial Distribution Date: The later of: (i) five (5) Business Days after the Effective Date; and (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable.

Insider: Insider shall have the meaning ascribed to it in 11 U.S.C. § 101(31).

Intercompany Claims: Any Claim or Right of Action held by any Debtor or Non-Debtor Subsidiary against any Debtor accruing before or after the Petition Date, including, but not limited to, any claim for reimbursement, payment as guarantor or surety, or any claim for contribution and expenses that were allocable between multiple Debtors.

Lien: Any lien, security interest, mortgage, or similar encumbrance on property of the applicable Debtor that secures payment of a debt or obligation, which lien, interest, mortgage, or similar encumbrance is valid, perfected, and enforceable against such property or the proceeds thereof and is non-avoidable.

Liquidating Trust: The trust created pursuant to the Plan for the benefit of Holders of Allowed Claims that is to be formed and governed by the terms of the Plan and the Liquidating Trust Agreement.

Liquidating Trust Agreement: That certain Liquidating Trust Agreement that is to govern the Liquidating Trust, in substantially the form of such document included in the Plan Supplement, pursuant to which, among other things, the Liquidating Trust Assets shall be initially conveyed and the proceeds thereof shall ultimately be distributed pursuant to the terms of this Plan.

Liquidating Trust Assets: The Liquidating Trust Assets shall consist of all Assets of the Bankruptcy Estates as of the Effective Date, including but not limited to all of the Debtors' bank accounts and real property.

Liquidating Trustee: [●], or a representative thereof, who shall control all Avoidance Actions and manage the Liquidating Trust pursuant to the terms of the Plan and the Liquidating Trust Agreement.

Millville Real Property: The Debtors' interest in real property located at 301 Riverside Drive and 330 Riverside Drive, Millville, NJ.

Palatka Real Property: The Debtors' interest in real property located at 411 Mulholland Pk. Palatka, FL.

Petition Date: April 30, 2012, the date upon which the Debtors filed their voluntary Chapter 11 bankruptcy petitions.

Plan: This liquidating plan and all exhibits hereto, proposed by the Debtors, either in its present form or as may be altered, amended, modified, or supplemented from time to time in accordance herewith and with the Bankruptcy Code and the Bankruptcy Rules.

Plan Proponents: The Debtors.

Plan Supplement: The supplement to the Plan that will be filed on or before the Plan Supplement Filing Date and will, among other things, contain the forms of the Liquidating Trust Agreement and the identity of the Liquidating Trustee.

Plan Supplement Filing Date: The date by which the Plan Supplement and any Exhibits or Plan Schedules not filed with the Plan shall be filed, which date shall be at least five (5) Business Days prior to the Voting Deadline.

Priority Claims: Those claims afforded priority under 11 U.S.C. §§ 507(a)(3) through (a)(9), excluding Priority Tax Claims.

Priority Tax Claims: Those claims afforded priority under 11 U.S.C. § 507(a)(8).

Privilege: All attorney-client privileges, work product protections, and other immunities or protections from disclosure held by the Debtors.

Proceeds: The funds realized by the applicable Bankruptcy Estate from the sale, lease, settlement, adjudication, or other disposition of an Asset, including any recovery from a Right of Action.

Pro Rata: The ratio (expressed as a percentage) of (i) the amount of any Allowed Claim in a particular Class to (ii) the sum of (x) the aggregate amount of all Allowed Claims in such Class, and (y) the aggregate amount of Disputed Claims in such Class.

Professional: Those persons (a) retained pursuant to an order of the Bankruptcy Court in accordance with 11 U.S.C. §§ 327, 1103, and/or 1106 and to be compensated for services rendered prior to the Effective Date pursuant to 11 U.S.C. §§ 327, 328, 329, 330, and/or 331; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to 11 U.S.C. §§ 330 and 503(b)(2).

Professional Fee Claim: (a) a claim under 11 U.S.C. §§ 327, 331, 503(b), 1103, or 1106 for compensation for professional services rendered or expenses incurred prior to the Effective Date on the Estates' behalf; or (b) a claim under 11 U.S.C. § 503(b)(4) for compensation for professional services rendered.

Professional Fee Claim Bar Date: The date that is thirty (30) days after the Confirmation Date by which any entity holding a Professional Fee Claim shall file with the Bankruptcy Court a final fee application and serve such application on counsel to the Debtors and counsel to the Committee.

Receivables: Accounts receivable of the applicable Debtor.

Rejection Claim: Any Claim for amounts due as a result of the rejection of any executory contract or unexpired lease that is rejected by the Debtors if, pursuant to the Plan, which Claim must be filed by the Rejection Claim Bar Date, or if by other order of the Bankruptcy Court, which Claim must be filed by the date specified in such order.

Rejection Claim Bar Date: Thirty (30) days after the Effective Date; *provided, however*, if a motion seeking assumption or rejection is not heard and determined prior to the Effective Date, any Claim based thereon shall be filed within thirty (30) days of entry of an order ruling on such a motion, or such earlier date ordered by the Bankruptcy Court with respect to the rejection of any contract or lease other than under the Plan.

Rejection Date: The date on which an executory contract or unexpired lease is rejected, which date shall be the Confirmation Date unless another order of the Bankruptcy Court specifies otherwise.

Rights of Action: Any and all claims, actions, causes of action, suits, judgments, third-party claims, counterclaims, cross-claims, or other rights of recovery, whether asserted or unasserted or pending as of the Effective Date or direct, indirect, derivative or otherwise, or known or unknown, or asserted or unasserted, that are held by the applicable Debtor or Bankruptcy Estate against any person, entity, or property, wherever located, from the beginning of the world to the Effective Date, including Avoidance Actions, all claims objections, and all

- 8 -

claims against all persons having dealings, relationships, or transactions with or related to the Debtors or Debtors-In-Possession.

Sale Order: The Order entered on July 26, 2012 authorizing the sale pursuant to Bankruptcy Code Section 363 of (i) substantially all operating assets of Hunter Marine Corporation; (ii) all molds, tooling brand names, websites, intellectual property, and dealer agreements required to produce the lines of Mainship Corporation and Luhrs Corporation; (iii) the Hunter Marine Operating Assets; (iv) the tangible personal property of Silverton Marine Corporation, Luhrs Corporation, Mainship Corporation, and Ovation Yachts Corporation; and (v) inventory, molds, tooling, spare parts, works in progress, and intangible personal property rights of Silverton Marine Corporation and Ovation Yachts [Docket No. 299].

Salisbury Real Property: The Debtors' interests in two parcels of real property located at 1122 Marine Road, Salisbury, MD.

Schedules: The Debtors' schedules of assets and liabilities, statements of financial affairs, and such other schedules in accordance with 11 U.S.C. § 521 filed by the Debtors with the Bankruptcy Court, as may be amended.

Secured Claim: A Claim against the Debtors that is secured by a Lien against the Debtors' property as provided by 11 U.S.C. § 506(a) or that is subject to recoupment or setoff under 11 U.S.C. § 553.

St. Augustine Real Property: The Debtors' interest in real property located at 255 Diesel Rd., St. Augustine, FL.

SWED: Salisbury Wicomico Economic Development, Inc.

Tax Code: The Internal Revenue Code of 1986, as amended from time to time.

Textron: Textron Financial Corporation.

Unsecured Claim: Any Claim that is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, a Secured Claim, a Priority Claim, or an Intercompany Claim or any Claims held by or due to the Debtors' current or former officers and directors, or any Insiders of the Debtors, and includes any Claim for penalties, additions, or other amounts asserted on or in connection with any Tax Claim.

US Trustee: The United States Trustee for the District of New Jersey.

Voting Deadline: The date by which all votes on the Plan are due to be submitted and received pursuant to the Confirmation Order.

# ARTICLE II.
## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEES, TAX CLAIMS, AND PRIORITY CLAIMS

### Section 2.1    Introduction

As provided in 11 U.S.C. § 1123(a)(1), Administrative Claims and Priority Tax Claims are unclassified claims, are not Impaired, and are not entitled to vote on the Plan, because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code. These non-voting Claims shall be treated separately as unclassified Claims as set forth in this Article II.

### Section 2.2    Administrative Claims in General

Except to the extent that a holder of an Allowed Administrative Claim agrees to a different treatment or is a Professional Fee Claim, Allowed Administrative Claims shall be paid on the Effective Date, or as soon thereafter as practicable, to each holder of an Allowed Administrative Claim in Cash in an amount equal to such Allowed Administrative Claim from the Administrative Claims Escrow.  Allowed Professional Fee Claims shall be paid as described in Article IX of this Plan.  Any portion of the Post-Petition Secured Claim of Bank of America that is not paid in full from the liquidation of the Debtors' real property Assets shall be deemed to be an Allowed Administrative Claim.

An Administrative Claim that is unliquidated or is a Disputed Claim or otherwise not an Allowed Administrative Expense Claim shall not receive any Distribution unless and until such Claim becomes an Allowed Administrative Claim.  As soon as is practicable after the entry of a Final Order allowing an Administrative Claim, the Holder of that Claim shall receive the full amount of such Claim in one cash payment from the Liquidating Trust.

### Section 2.3    Bar Date for Administrative Claims

Requests for payment of an Administrative Claims and/or requests for the allowance and payment of Administrative Claims, other than Professional Fees, unless otherwise required pursuant to a prior order of the Bankruptcy Court, must be filed and served by the Administrative Claims Bar Date.  Any Entities that fail to file a request for payment of an Administrative Claim on or before the Administrative Claims Bar Date shall be forever barred from asserting such Claim against the Debtors or their Bankruptcy Estates, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover such Administrative Claim and such Entity shall be deemed to forever waive and be barred from asserting such Administrative Claim and shall not be entitled to a distribution under the Plan, and the Debtors or the Liquidating Trustee shall have no obligation with respect thereto.

### Section 2.4    Statutory Fees

All unpaid fees due and payable under 28 U.S.C. § 1930 shall be paid by the Liquidating Trustee from the Liquidating Trust, as such fees arise prior to and after the Effective Date until a Final Decree is entered in these Chapter 11 Cases.

### Section 2.5     Professional Fees

(a)     *Time for Filing and Allowance*

Unless otherwise expressly provided in the Plan, a Professional Fee Claim will be Allowed only if: (i) on or before 4:00 p.m. (prevailing Eastern Time) on the fifth (5th) Business Day prior to the Confirmation Hearing, the Professional files and delivers to counsel to the Debtors, the Committee, and Bank of America a written estimate of all unpaid amounts through the Effective Date for which compensation will be sought; (ii) on or before the Professional Fee Claim Bar Date, which date is 30 days after the Confirmation Date, the entity holding such Professional Fee Claim files with the Court a final fee application and serves the application on counsel to the Debtors, counsel to the Committee, Bank of America, the Liquidating Trustee, and the U.S. Trustee; and (iii) the Court enters a Final Order allowing such Claim.  Notwithstanding the foregoing, the Professional Fee Claims of Keen shall be Allowed, without any further order of the Court, provided that (i) the amount of the fees do not exceed the amounts set forth in the Order Authorizing Employment and Retention of GA Keen Realty Advisors, LLC, as Special Real Estate Advisor to the Debtors [Docket No. 201], (ii) Keen delivers to counsel to the Debtors, the Committee, and Bank of America, a written, detailed statement of all unpaid amounts through the date for which compensation is sought, and (iii) no party provides notice of its objection to the request for payment of the Professional Fee Claim amount within twenty (20) days of delivery of the statement to Bank of America.  In the event Bank of America objects to any Professional Fee Claim delivered by Keen, then a Professional Fee Claim will be Allowed by Keen only if: (i) Keen shall file with the Court a final fee application and serves the application on counsel to the Debtors, the Committee, Bank of America, the Liquidating Trustee, and the U.S. Trustee; and (ii) after an opportunity to object and a hearing, the Court enters a Final Order allowing such Claim.

Any party in interest may file an objection to such application within the time provided by the Bankruptcy Rules or within any other period that the Bankruptcy Court establishes. Entities holding Professional Fee Claims that do not timely file and serve a fee application will be forever barred from asserting such Professional Fee Claim against the Debtors, the Estates, the Liquidating Trust, Bank of America, or their respective property.

(b)     *Payment of Professional Fees*

For the avoidance of doubt, Allowed Professional Fee Claims are not included as Allowed Administrative Claims for purposes of Section 2.2 above.

Allowed Professional Fee Claims shall be paid first, from retainers paid to professionals pre-petition, if any; second, from cash collateral and DIP advances limited to the amounts allocated to the professionals in the DIP Facility budget; and third, pro rata from the proceeds of the sales of real property outlined in Section 9.2 of this Plan.  Allowed Professional Fee Claims limited to the amounts allocated to the professionals in the DIP Facility budget shall be paid in full from the first such sale (and, if necessary due to a deficiency, from subsequent sales).  After the sales of all real property contemplated in Section 9.2 of this Plan, the Liquidating Trustee and Bank of America shall determine the appropriate amounts of the pro rata distribution, and shall allocate the remaining funds accordingly subject to Section 9.2 of this Plan.  Any allowed

Professional Fee Claims in excess of the specific amounts allocated to the professionals in the DIP Facility budget shall be paid by from the sale of the Salisbury Real Property as identified in Section 9.1(b).

 (c) *Retainers Held by Professionals*

 On the Effective Date, all Professionals holding an unapplied retainer or portion thereof, in excess of fees and expenses allowed by the Bankruptcy Court, shall remit all such funds to the Liquidating Trustee, which funds shall be added to the Liquidating Trust.

## Section 2.6 Priority Tax Claims

 (a) Allowed Priority Tax Claims arising with respect to the Debtors' real property shall be paid from the proceeds of the post-confirmation sale of the real property giving rise to the Allowed Priority Tax Claim.

 (b) Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment, or the Holder of an Allowed Priority Tax Claim is subject to Section 2.6(a) above, at the sole option of the Liquidating Trustee, each Holder of an Allowed Priority Tax Claim shall receive in full and complete settlement, satisfaction, and discharge of its Allowed Priority Tax Claim: (i) Cash in an amount equal to such Allowed Priority Tax Claim on or as soon as is practicable after the Initial Distribution Date, or (ii) such other treatment as agreed to by the Holder of the Allowed Priority Tax Claim and the Liquidating Trustee.

## Section 2.7 Priority Claims

 Except to the extent that a Holder of an Allowed Priority Claim agrees to a different treatment, each such Holder of an Allowed Priority Claim shall receive from available funds in the Liquidating Trust, in full and complete settlement, satisfaction, and discharge of such Claim, Cash in an amount equal to such Claim, on the Initial Distribution Date.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS

## Section 3.1 Substantive Consolidation

 The Plan contemplates and is predicated upon substantive consolidation of the Debtors Estates solely for purposes of all actions and distributions under the Plan. Entry of the Confirmation Order shall constitute approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the deemed substantive consolidation of the Chapter 11 Cases and Bankruptcy Estates for all purposes related to the Plan, including, without limitation, for purposes of voting, confirmation, and distribution. On and after the Effective Date, (i) all assets and liabilities of the Debtors shall be deemed merged so that all of the Assets of the Debtors shall be transferred to the Liquidating Trust, subject to the Liens encumbering such Assets immediately prior to the Effective Date, and available to pay all of the liabilities under the Plan as if it were one company, (ii) no monetary distributions shall be made under the Plan on account of Intercompany Claims among the Debtors, (iii) no distributions will be made under the Plan on account of any Equity Interests held by any of the Debtors, (iv) all guarantees of the

Debtors of the obligations of any other Debtor shall be deemed to be eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of the Debtors shall be deemed one obligation of the consolidated Debtors, and (v) each and every Claim filed or to be filed in the Chapter 11 Case of any of the Debtors shall be deemed filed against the consolidated Debtors and shall be deemed one Claim against and obligation of the consolidated Debtors.

### Section 3.2    Summary

The classifications of Claims in this Article III shall apply for all purposes, including voting, confirmation, and distribution pursuant to the Plan, pursuant to 11 U.S.C. §§ 1122 and 1123(a)(1).  A Claim shall be deemed classified in a particular Class only to the extent that: (i) the Claim qualifies within the description of that Class (and shall be deemed classified in a different Class to the extent that any portion of such Claim qualifies within the description of such different Class), (ii) the Claim is Allowed as of the Effective Date, and (iii) the Claim has not been paid or otherwise satisfied prior to the Effective Date.

### Section 3.3    Classification

The Claims against the Debtors are classified as follows:

    (a)       Class 1: Post-Petition Secured Claim of Bank of America

    (b)       Class 2: Pre-Petition Secured Claim of Bank of America

    (c)       Class 3: Unsecured Claims

    (d)       Class 4: Secured Claim of Textron

    (e)       Class 5: Secured Claim of SWED

    (f)       Class 6: Other Secured Claims

    (g)       Class 7: Claims of John Luhrs and Warren Luhrs

### Section 3.4    Identification of Impaired Classes and Voting Rights

Holders of Claims in Classes 1, 2, 3, and 7 are impaired and are entitled to vote to accept or reject the Plan.

(a)    *Class 1 – Post-Petition Secured Claim of Bank of America – Impaired*

Class 1 consists of the Allowed Post-Petition Secured Claim of Bank of America pursuant to the DIP Order and including the Cash paid from the Administrative Claims Escrow. The Debtors estimate that the total of the Class 1 Claims equals $795,000.  Bank of America will receive proceeds from sales, as indicated in Section 9.2 of this Plan, in satisfaction of its Class 1 Claims.  The Debtors believe Class 1 will be paid in full, is impaired, and is entitled to vote.  The

Post-Petition Secured Claim of Bank of America shall be deemed Allowed and shall not be subject to offset or other abatement.

**Class 1 is impaired and entitled to vote on the Plan.**

(b)   *Class 2 – Pre-Petition Secured Claim of Bank of America – Impaired*

Class 2 consists of the Allowed Pre-Petition Secured Claims of Bank of America.  The Debtors estimate that the total of all filed and scheduled Class 2 Claims equals $13,449,495. Pursuant to this Plan, Bank of America will receive proceeds from sales, as indicated in Article IX of this Plan, in satisfaction of its Class 2 Claims.  The Pre-Petition Secured Claim of Bank of America shall be deemed Allowed and shall not be subject to offset or other abatement.

**Class 2 is impaired and entitled to vote on the Plan.**

(c)   *Class 3 – Unsecured Claims – Impaired*

Class 3 consists of all Allowed Unsecured Claims.  Holders of Allowed Class 3 Claims will receive in full and final satisfaction of their Allowed Class 3 Claim a Pro Rata Distribution of the Liquidating Trust after all Liquidating Trust Assets are liquidated or otherwise disposed of and all other obligations required of the Liquidating Trust by this Plan are satisfied.

**Class 3 is impaired and entitled to vote on the Plan.**

(d)   *Class 4 – Secured Claim of Textron – Not Impaired*

Class 4 consists of all Allowed Secured Claims of Textron.  Under this Plan, the Debtors will convey the Palatka Real Property, on which Textron's claim is based, to Textron.  Textron shall have 30 days from the Confirmation Date to file a deficiency claim, which deficiency claim will be classified as an Unsecured Claim and deemed a Class 3 Claim as outlined in Section 9.3 of this Plan.  The Debtors and the Liquidating Trustee, as appropriate, reserve all rights including the right to object to Textron's deficiency claim.  Class 4 will receive no distribution, is not impaired, and is not entitled to vote.

**Class 4 is not impaired and is presumptively deemed to have accepted the Plan.**

(e)   *Class 5 – Secured Claim of SWED – Not Impaired*

Class 5 consists of all Allowed Secured Claims of SWED.  The Debtors estimate that the total of all filed and scheduled Class 5 Claims equals $309,178.  Class 5 will receive payment in full from the net sale proceeds of the sale of the Salisbury Real Property.  Class 5 is not impaired, and is not entitled to vote.

**Class 5 is not impaired and is presumptively deemed to have accepted the Plan.**

(f)   *Class 6 – Other Secured Claims – Not Impaired*

Class 6 consists of all Secured Claims of the Debtors not separately classified in this Plan.  The Debtors estimate that the total of all filed and scheduled Class 6 Claims equals $250,176.  On the Effective Date, or as soon thereafter as is practicable, each Holder of an Allowed Class 6 Claim shall receive, in full satisfaction and discharge of and in exchange for such Allowed Class 6 Claim, one of the following distributions: (i) the payment of such Holder's Allowed Class 6 Claim in full in Cash; (ii) the surrender to the Holder of any Allowed Class 6 Claim of the property securing such Claim; or (iii) such other distributions as shall be necessary to satisfy the requirements of Chapter 11 of the Bankruptcy Code.

**Class 6 is not impaired and is presumptively deemed to have accepted the Plan.**

(g)    ***Class 7 - Claims of John Luhrs and Warren Luhrs – Impaired***

Class 7 consists of any and all Claims of John Luhrs and Warren Luhrs (the "Luhrs Brothers").  The Debtors estimate that the total of all filed and scheduled Class 7 Claims equals $27,862,732.  As outlined in Section 15.8 of this Plan, the Luhrs Brothers have consented to waiver of their liens and security interests, and subordination of their Claims to the Claims of Class 3, and will only receive a pro rata distribution should Class 3 be satisfied in full.  The Luhrs Brothers have consented to vote in favor of the Plan.  Furthermore, those certain Debt Subordination Agreements executed by the Luhrs Brothers dated September 30, 2006 and October 7, 2003 in favor of Bank of America shall remain in full force and effect.

**Class 7 is impaired and entitled to vote on the Plan.**

## ARTICLE IV.
## INTER-DEBTOR CLAIMS

### Section 4.1    Inter-Debtor Waiver

By virtue of the compromises and settlement of the issues set forth in the Plan, on the Effective Date, (i) each Debtor shall waive any defense, including, without limitation, defenses arising under §§ 502(d) and 553(a) of the Bankruptcy Code, to Intercompany Claims asserted by another Debtor and such claims shall be deemed Allowed Claims, (ii) Intercompany Claims between Debtors shall be deemed to be mutual claims arising prior to the Petition Date for purposes of setoff, (iii) each Debtor shall waive its right to receive any distribution on any Claims and Rights of Action such Debtor may have against another Debtor, and (iv) each Debtor shall waive and forever release any right, Claim, or Right of Action which has been or could have been asserted by such Debtor against any other Debtor.

## ARTICLE V.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### Section 5.1    Assumption and Rejection

All executory contracts and unexpired leases, other than those executory contracts and unexpired leases which (i) were executed subsequent to the Petition Date, or (ii) have not expired by their own terms prior to the Confirmation Date, and other than those executory contracts and

unexpired leases regarding which an Order has been entered prior to the Effective Date authorizing assumption thereof, shall be deemed rejected upon the Confirmation Date except for any executory contract or unexpired lease that is specifically designated to be assumed or has been assumed or assumed and assigned under the Plan.

### Section 5.2    Indemnification Agreements

The obligations of the Debtors to indemnify any person having served as an officer or director of the Debtors, to the extent provided in any of the Debtors' corporate governance documents or by written or other agreement or applicable law, shall be terminated and extinguished and, to any extent necessary, deemed an executory contract, terminated and rejected under the Plan.  Notwithstanding the foregoing, this provision will not limit or modify any indemnification obligations approved by this Court.

### Section 5.3    Claims Relating to Assumption or Rejection

Any party to an executory contract or unexpired lease not previously assumed or rejected and to which no bar date has been established, which is assumed or rejected pursuant to this Plan or is the subject of a pending rejection motion, is required under the terms of this Plan to file a claim for amounts due as a result of such assumption or rejection by the Rejection Claim Bar Date; provided, however, if a motion seeking assumption or rejection is not heard and determined prior to the Effective Date, any Claim based thereon shall be filed within thirty (30) days of entry of an Order ruling on the motion.  Any Allowed Claim relating to the rejection of executory contracts or leases shall be treated as an unsecured Claim of the appropriate Debtor and will be classified as a general unsecured claim and deemed a Class 3 Claim.  Any Allowed cure claim relating to the assumption of executory contracts or leases pursuant to the Plan shall be paid in full from the Liquidating Trust Assets to the extent finally determined as of the Effective Date, or, to the extent thereafter, from an Interim Distribution or subsequent distribution by the Liquidating Trustee.  Any such claim not filed by the Rejection Claim Bar Date as provided in the Plan shall be forever barred and shall not be enforceable against the Debtors or their properties or the Liquidating Trust, and the Debtors and Liquidating Trust shall have no obligation to pay the same.

### Section 5.4    Insurance Policies

To the extent that any and all insurance policies including any directors and officers liability insurance policies are considered executory contracts, then notwithstanding anything contained in the Plan to the contrary, such insurance policies shall be deemed assumed and assigned to the Liquidating Trust.  Unless otherwise determined by the Bankruptcy Court, pursuant to a Final Order, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such policy.  For the avoidance of any doubt, all rights under any insurance policy, including any directors and officers liability insurance policies, that is not an executory contract, and all rights under any other insurance policies under which the Debtors may be beneficiaries, shall be preserved and shall vest with the Liquidating Trust; and, nothing herein shall alter or adversely affect the rights of any non-Debtor beneficiaries of or insured persons under such insurance policies.

## ARTICLE VI.
## THE LIQUIDATING TRUST

### Section 6.1    Appointment of Liquidating Trustee

(a)    On or before the Plan Supplement Filing Date, [●] shall be selected as Liquidating Trustee.  If approved by the Bankruptcy Court in the Confirmation Order, the person so designated shall become the Liquidating Trustee of the Liquidating Trust on the Effective Date.

(b)    The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Liquidating Trust Agreement.

### Section 6.2    Funding of the Liquidating Trust

The Liquidating Trust will initially be funded pursuant to the DIP Order by a $50,000 loan from Bank of America, to be paid back as outlined in Section 9.2(h) of this Plan; then will continue to be funded by the liquidation of the Trust Assets, including real property as indicated in Article IX of this Plan and subject to any other applicable Plan provision.  To the extent necessary, the Liquidating Trust will administer the Administrative Claims Escrow.

### Section 6.3    Transfer of Liquidating Trust Assets to the Liquidating Trust

On the Effective Date, the Debtors shall transfer and shall be deemed to have irrevocably transferred to the Liquidating Trust, for and on behalf of the beneficiaries of the Liquidating Trust, with no reversionary interest, the Liquidating Trust Assets.

### Section 6.4    The Liquidating Trust

(a)    Without any further action of the directors or shareholders of the Debtors, on the Effective Date, the Liquidating Trust Agreement for the Liquidating Trust, substantially in the form attached as an exhibit to the Plan Supplement, shall become effective.  On or before the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement and shall take such other necessary steps to establish the Liquidating Trust.  The Liquidating Trustee shall accept the Liquidating Trust Assets and sign the Liquidating Trust Agreement on the Effective Date and the Liquidating Trust will then be deemed created and effective.

(b)    The Liquidating Trustee shall have the powers, duties, and obligations set forth in the Plan and the Liquidating Trust Agreement.  The costs and expenses incurred in maintaining, protecting, and distributing the Liquidating Trust, and paying the Liquidating Trustee and the U.S, Trustee fees by the Liquidating Trustee on and after the Effective Date shall be paid from the Liquidating Trust Assets.  Upon entry of the Final Decree and as otherwise provided in the Liquidating Trust Agreement, the Liquidating Trust shall be terminated and dissolved without further action by the Liquidating Trustee or the Court.  In connection with the Liquidating Trust Assets, any and all rights, claims, and causes of action, any attorney-client or similar privilege, work-product privilege, or other privilege or immunity attaching to any documents or

communications (whether written or oral) transferred to the Liquidating Trust shall vest with the Liquidating Trustee and its representatives.

(c)     The Liquidating Trustee shall have full authority to take any steps necessary to administer the Liquidating Trust Assets including, without limitation, the duty and obligation to liquidate Liquidating Trust Assets, and to pursue and settle any other Claims or Rights of Action, subject to the procedures in the Liquidating Trust Agreement.  Upon such transfer, the Debtors and their Estates shall have no other rights or obligations with respect to the Liquidating Trust.

(d)     The Liquidating Trustee shall be entitled to payment of reasonable fees and expenses for all services rendered, or to be rendered, in its capacity as Liquidating Trustee, as well as all expenses incurred, or to be incurred, in connection with the administration and wind down of these Chapter 11 Cases, the Liquidating Trust, and the Plan, as identified in the Fee Schedule attached as Exhibit A to the Liquidating Trust Agreement filed with the Court on or before the Plan Supplement Filing Date.  All costs and expenses associated with the administration shall be the sole responsibility of and paid by the Liquidating Trust from the Liquidating Trust Assets.

(e)     The Liquidating Trustee shall continue the retention of Keen on the same terms and conditions, and may retain such law firms, accounting firms, experts, advisors, consultants, investigators, appraisers, auctioneers or other professionals as it may deem necessary (collectively, the "Liquidating Trustee Professionals"), in its sole discretion, and at the sole expense of the Liquidating Trust, to aid in the performance of its responsibilities pursuant to the terms of this Plan including, without limitation, the liquidation and distribution of Liquidating Trust Assets.

(f)     Distribution of Liquidating Trust Assets:  The Liquidating Trustee is required to distribute pursuant to the provisions of the Plan to the holders of Allowed Claims on account of their interests in the Liquidating Trust, on a periodic basis, and at least once per year (if practicable), all unrestricted Cash on hand (including any Cash received from the Debtors on the Effective Date, and treating any permissible investment as Cash for purposes of this Section, except such amounts (i) as have been reserved on account of Disputed Claims, or are otherwise part of the claim reserve established by the Liquidating Trustee, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (iii) as are necessary to pay reasonable incurred or anticipated expenses (including, but not limited to, any taxes imposed on or payable by the Debtors or the Liquidating Trust or in respect of the Liquidating Trust Assets), or (iv) as are necessary to satisfy other liabilities incurred or anticipated by the Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement; provided, however, that the Liquidating Trustee shall not be required to make a distribution pursuant to this Section if the aggregate, net amount of unrestricted Cash available for distribution (taking into account the above listed exclusions) is such as would make the distribution impracticable as reasonably determined by the Liquidating Trustee; and provided further that nothing in this Plan shall compel the Liquidating Trustee to treat any tentative Tax Refund(s) obtained pursuant to Tax Code Section 6411 as unrestricted cash until completion of the associated audit by the relevant authorities.

(g)    As of the Effective Date, the Liquidating Trustee, on behalf of the holders of Allowed General Unsecured Claims, the Debtors, or the Bankruptcy Estates, as applicable, shall be responsible for: (i) liquidating or otherwise reducing to Cash the unliquidated Liquidating Trust Assets; (ii) filing, prosecuting, compromising, and settling the Rights of Action; (iii) making distributions under the Plan; (iv) settling, resolving, and objecting to Claims including Unsecured Claims; (v) seeking estimation of contingent or unliquidated Claims including Unsecured Claims under 11 U.S.C. § 502(c); (vi) investing the Liquidating Trust Assets; (vii) establishing claim reserves as the Liquidating Trustee, in its sole discretion, deems appropriate; (viii) winding up the affairs of the Debtors and the Bankruptcy Estates; (ix) complying with, enforcing, and carrying out the terms of the Plan and Liquidating Trust Agreement; (x) compensating professionals of the Liquidating Trust and the Liquidating Trustee; and (xi) making and filing all tax returns for the Liquidating Trust.

(h)    For federal income tax purposes, it is intended that the Liquidating Trust be classified as a grantor trust under Treasury Regulation section 301.7701–4 and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution of an undivided interest in the Liquidating Trust Assets and then contributed such interests to the Liquidating Trust. The Liquidating Trust Agreement shall (i) state that the primary purpose of the Liquidating Trust is to liquidate the Liquidating Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose and (ii) contain a fixed or determinable termination date that is not more than three (3) years from the date of creation of the Liquidating Trust, which termination date may be extended for one or more finite terms subject to the approval of the Bankruptcy Court upon a finding that the extension is necessary to its liquidating purpose. Each such extension must be approved by the Bankruptcy Court within one (1) month before the beginning of the extended term.

(i)    The Liquidating Trustee shall be responsible for filing all federal, state, and local tax returns for the Liquidating Trust. The Liquidating Trustee shall file all federal tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671–4. The Liquidating Trustee also will annually send to each holder of an interest in the Liquidating Trust a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns. The Liquidating Trustee shall also file (or cause to be filed) any other statement, return, or disclosure relating to the Liquidating Trust that is required by any governmental unit.

(j)    Tax Reporting for Liquidating Trust:

(i)    On or before the Effective Date, the Debtors shall provide the Liquidating Trustee with a good-faith valuation of the Tax Refunds as of the Effective Date. As soon as practical after the Effective Date, the Liquidating Trustee shall determine the fair market value, as of the Effective Date, of all other Liquidating Trust Assets, and shall make all such values (including the Tax Refunds value)

available from time to time, and such values shall be used consistently by all parties to the Liquidating Trust (including, without limitation, the Debtors, the Liquidating Trustee, and Liquidating Trust beneficiaries) for all United States federal income tax purposes.

(ii)    Allocations of Liquidating Trust taxable income among the Liquidating Trust beneficiaries shall be determined by reference to the manner in which an amount of cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all the Liquidating Trust Assets (valued at their tax book value) pursuant to this Plan, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust.   Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets.   The tax book value of the Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(iii)    Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall (A) timely elect to treat any Disputed Claim Reserve as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.   All parties (including the Liquidating Trustee, the Debtors, and the Liquidating Trust beneficiaries) shall report for United States federal, state, and local income tax purposes consistently with the foregoing.

(iv)    The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust Assets, of any Taxes imposed on the Liquidating Trust or the Liquidating Trust Assets, including the Disputed Claim Reserve.   In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claim Reserve is insufficient to pay the portion of any such Taxes attributable to the taxable income arising from the Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims, such Taxes shall be (A) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (B) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Liquidating Trustee as a result of the resolution of such Disputed Claims.

(k)     The Liquidating Trustee shall invest the Liquidating Trust Assets in: (a) direct obligations of the United States or obligations of any agency or instrumentality thereof, which are guaranteed by the full faith and credit of the United States; (b) money market deposit accounts, checking accounts, savings accounts, or certificates of deposit, or other time deposit accounts that are issued by a commercial bank or savings institution organized under the laws of the United States or any state thereof, including the Liquidating Trustee; (c) any other investments that may be permissible under either 11 U.S.C. § 345 or any order of the Bankruptcy Court entered in the Debtors' Chapter 11 Cases; or (d) any other investments as provided under the Liquidating Trust Agreement.

(l)     The Liquidating Trustee shall have sole authority, without further Bankruptcy Court approval, to liquidate or otherwise dispose of the Liquidating Trust Assets, to file, prosecute, and settle objections to Claims, to pursue, settle, or otherwise resolve or abandon any Rights of Action, to hire and pay professional fees and expenses of counsel and other advisors with the reasonable fees and expenses of such professionals to be paid from the Liquidating Trust Assets, and to take such other actions as shall be necessary to implement the Plan, wind down the Debtors' affairs, and effect the closing of these Chapter 11 Cases and all other actions required under the Liquidating Trust Agreement.

### Section 6.5     Limitation of Liability for Liquidating Trustee

Upon the Effective Date and execution of the Liquidating Trust Agreement, the Liquidating Trustee as trustee of the Liquidating Trust, and not personally, shall be vested in all right, title, and interest in all Liquidating Trust Assets, and all rights to enforce orders of the Bankruptcy Court entered in this Bankruptcy Proceeding.   The Liquidating Trustee shall liquidate the Liquidating Trust Assets and distribute the proceeds thereof in accordance with this Plan and the Liquidating Trust Agreement.   The Confirmation Order shall state that without the permission of the Bankruptcy Court, no judicial, administrative, arbitration, or other action or proceeding shall be commenced against the Liquidating Trustee in its official or personal capacity, with respect to its status, duties, powers, acts, or omissions as the Liquidating Trustee in any forum other than the Bankruptcy Court.

The Liquidating Trustee shall act on behalf of the Liquidating Trust to carry out its obligations and to exercise its rights in accordance with and subject to the Plan, the Confirmation Order and the Liquidating Trust Agreement.   The Liquidating Trustee shall be vested with the rights, powers, and benefits as set forth in the Liquidating Trust Agreement, including without limitation, all rights, powers, and benefits afforded a "trustee" under 11 U.S.C. §§ 704 and 1106.

The Liquidating Trustee shall be compensated as set forth in Exhibit A to the Liquidating Trust Agreement and shall not be required to file a fee application or obtain any approval of the Bankruptcy Court to receive compensation.   The Liquidating Trustee may pay from the Liquidating Trust Assets all reasonable fees and expenses incurred in connection with the duties and actions of the Liquidating Trustee, including, but not limited to, fees and expenses of the Liquidating Trustee's professionals, insurance, taxes, and other expenses arising in the ordinary course of business in maintaining, liquidating, disposing of, and the distribution of the Liquidating Trust Assets and compensation to the Liquidating Trustee. The Liquidating Trustee may pay all such reasonable fees and expenses without Bankruptcy Court approval.   Any

disputes concerning the administration of the Liquidating Trust or implementation of the distribution of the Liquidating Trust Assets may be brought before the Bankruptcy Court for resolution.

The Liquidating Trustee shall be authorized and empowered to object to Claims and to pursue and prosecute, settle, or decline to pursue such objections, as well as the Rights of Action, whether or not the Rights of Action or objections to Claims have been commenced prior to the Effective Date.  The Liquidating Trustee shall be substituted as the real party in interest in any such action or objection, commenced by or against the Debtors or the Committee, and may pursue, or decline to pursue, such objections or Rights of Action.  The Liquidating Trustee may, in its sole discretion and business judgment, settle, release, sell, assign, otherwise transfer, or compromise such objections and Rights of Action, subject to the provisions of the Plan, without Bankruptcy Court approval.

The Liquidating Trustee may, but shall not be required to, set-off against any Claim and the distributions to be made pursuant to the Plan in respect of such Claim and/or Right of Action the Estate may have against the Claimant; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee of any such Right of Action, set-off, or recoupment which the Debtors may have against such Claimant.

A substituted Liquidating Trustee may be designated after resignation or other removal of the Liquidating Trustee as provided under the Liquidating Trust Agreement.

### Section 6.6    Final Administration of Liquidating Trust

Upon full administration of the Liquidating Trust Assets, and the satisfaction as far as possible of all remaining liabilities of the Liquidating Trust, including but not limited to all Rights of Action, in accordance with the Plan, the Liquidating Trustee, shall: (i) terminate the Liquidating Trust, by filing written notice of termination with the Bankruptcy Court and providing such notice to the Liquidating Trust beneficiaries and the US Trustee; and (ii) as soon as practicable after termination of the Liquidating Trust, provide to the US Trustee, and file with the Bankruptcy Court, a final account and report of Liquidating Trust administration and be forever discharged of and released from all power, duties, and responsibilities under the Liquidating Trust Agreement and the Plan.  Every effort shall be made to effectuate such termination no later than the time reasonably necessary to accomplish the Liquidating Trust's purpose of liquidating the Liquidating Trust Assets and distributing the proceeds thereof to the Liquidating Trust beneficiaries in accordance with the Liquidating Trust Agreement and the Plan, and in no event shall the Liquidating Trust continue for more than three (3) years after the Effective Date without further order of the Bankruptcy Court.

### ARTICLE VII.
### EFFECT OF CONFIRMATION

### Section 7.1    Vesting of Assets

On the Effective Date, all Assets of every kind and nature whatsoever of the Debtors and their Bankruptcy Estates shall vest in and be conveyed and transferred to the Liquidating Trust free and clear of all Liens (other than those of Bank of America), Claims, and encumbrances of the Debtors or any creditor or any other Entity, except the obligations, rights, and liens continued or granted pursuant to the Plan and the Confirmation Order.  As provided herein, these Liquidating Trust Assets shall be managed by the Liquidating Trustee and used for the sole purposes of consummating and carrying out the Plan and effectuating distributions to holders of Allowed Claims as provided hereunder.  Nothing herein shall prevent the Liquidating Trustee from abandoning any Liquidating Trust Assets after the Confirmation Date.

### Section 7.2    Authority to Effectuate Plan

Upon the entry of the Confirmation Order by the Bankruptcy Court and except as provided herein, any treatment or actions provided for or contemplated under the Plan shall be deemed to be authorized and approved without any further order or approval of the Bankruptcy Court.  The Debtors and the Liquidating Trustee shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary or proper to consummate and carry out the Plan, to consummate any transaction provided for herein and to effectuate the distributions provided for hereunder.  The Liquidating Trustee is also expressly authorized and empowered to liquidate, sell, dispose of, or abandon, for the benefit of the Trust and its beneficiaries, any and all Liquidating Trust Assets, to distribute the proceeds thereof in accordance with the Plan and the Liquidating Trust Agreement and to pay all costs and expenses associated with such sale, liquidation or disposition without further order of the Bankruptcy Court.

### Section 7.3    Binding Effect and Deemed Consent

Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Plan, the Confirmation Order, and all exhibits thereto shall bind all Claimants and holders of Equity Interests, whether or not such persons voted, or had a right to vote, to accept or reject the Plan.

### Section 7.4    Corporate Action and Dissolution of Debtors

Each of the matters provided for under the Plan involving any corporate action to be taken or required by the Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by stockholders, officers, directors, managers, or members of the Debtors.

From and after the Effective Date, and notwithstanding any applicable non-bankruptcy law to the contrary, the Debtors shall remain in existence for the sole purpose of winding up the Debtors' business and transferring the Estate Property and Remaining Assets to the Liquidating Trust, and for all other purposes, the Debtors shall be deemed dissolved and neither the Debtors or the Estates nor the Liquidating Trust shall be liable for any state or local annual or other corporation excise or similar tax.

Upon the Effective Date, each of Debtors' cases <u>except</u> the lead case, Morgan Industries Corp., Case No. 12-21156, shall be closed pursuant to the Confirmation Order.  Upon the entry of the Final Order, the Liquidating Trustee may file a certificate of dissolution as to each of the Debtors.  The Liquidating Trustee shall not be compelled to dissolve the Debtors if doing so would unduly burden the Liquidating Trustee.  No order shall be required to effectuate such dissolution and all state agencies shall accept a copy of the Plan and the Confirmation Order as sufficient to effectuate such dissolution without need for payment of any kind.

On the Effective Date, the obligations of, and Claims against, the Debtors and their Estates arising under, evidenced by, or relating to any agreements, contracts, indentures, certificates of designation, bylaws, certificates or articles of incorporation, or any other corporate governance document or instrument, shall be terminated and extinguished, including but not limited to the obligations of the Debtors to indemnify any Entity, including those who served as an officer or director of the Debtors, to the extent provided in any of the Debtors' corporate governance documents or by written or other agreement or applicable law.  Notwithstanding the foregoing, this provision will not limit or modify any indemnification obligations approved by the Court.

### Section 7.5    Dissolution of Committee

Upon the Effective Date, the Committee shall be dissolved and the Committee and its members shall be released and discharged from the rights and duties arising from or related to these Bankruptcy Cases and the retention or employment of the Committee professionals shall terminate, except with respect to final applications for professionals' compensation, provided that the Committee shall continue for the sole purpose of reviewing and taking any appropriate action (including, without limitation, filing objections thereto) in connection with Professional Fee Claims, after final resolution of which the Committee shall be dissolved, released, and discharged as indicated above.  The professionals retained by the Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred after the Effective Date except for services rendered and expenses incurred in connection with any applications by such professionals or Committee members for allowance of compensation and reimbursement of expenses pending on the Effective Date or timely Filed after the Effective Date as provided in this Plan, as approved by the Court and in accordance with the DIP Facility budget.

### Section 7.6    Late Claims

Any Claim filed after the Bar Date shall be unenforceable unless the Claimant has been granted an extension of time to file a Claim by the Bankruptcy Court, and such entity shall not be treated as a creditor or Claimant for the purposes of voting or distributions with respect to the Plan.  Unless otherwise expressly ordered by the Bankruptcy Court, any such late-filed Claim shall not be entered on the official claims register, shall be deemed Disallowed and expunged, and the Claimant shall receive no distribution under the Plan or from the Liquidating Trust Assets.

### ARTICLE VIII.
### IMPLEMENTATION OF THIS PLAN

### Section 8.1    Cancellation of Instruments and Equity Interests

On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims and all Equity Interests in the Debtors shall be cancelled and deemed terminated, without any further act or action under any applicable agreement, law, regulations, order, or rule.

### Section 8.2    Debtors' Books and Records.

On the Effective Date, the Debtors' books and records, in any form, including all electronic records, shall be transferred to the Liquidating Trust.  The Liquidating Trustee shall be free, in his or her discretion, to abandon, destroy, or otherwise dispose of those books and records so long as in compliance with applicable laws, rules, or regulations.  To the extent allowed by applicable laws, rules, or regulations, the Liquidating Trustee may destroy or dispose of the Debtors' books and records beginning one (1) year after the Effective Date.

### Section 8.3    Compromise of Controversies

In consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

## ARTICLE IX.
## DISPOSITION OF REAL PROPERTY

### Section 9.1    Contemplated Sales of the Salisbury Real Property

To the extent the Salisbury Real Property is not sold prior to the Confirmation Date, the following shall apply:

(a)    The Salisbury Real Property is to be marketed and sold, either individually or collectively, by Keen on the same terms and conditions under which Keen was retained prior to confirmation.

(b)    Subject to the payment of Allowed Professional Fee Claims as set forth in Section 2.5(b) of this Plan, net proceeds from the sales of the Salisbury Real Property shall be used first to pay in full the secured claim of SWED; then $25,000 to the Liquidating Trust for the benefit of Class 3 Claims; then to pay Allowed Professional Fee Claims in excess of the DIP Facility budget up through and including August 31, 2012; then the remainder, if any, to the Liquidating Trust for the benefit of Class 3 Claims.

(c)    The sale of the Salisbury Real Property shall not be subject to deed stamps or other excise tax pursuant to 11 U.S.C. § 1146(a).

### Section 9.2    Contemplated Sales of Certain Real Property

To the extent the Millville Real Property, the Alachua Real Property, or the St. Augustine Real Property ("Real Estate Lot A") are not sold prior to the Confirmation Date, the following shall apply:

(a)     Real Estate Lot A is to be marketed and sold, either individually, collectively, or in any combination, by Keen Realty Advisors ("Keen") on the same terms and conditions under which Keen was retained prior to confirmation.

(b)     Real Estate Lot A is to be sold on or before December 31, 2012, or by such other time as the Liquidating Trustee shall determine in its discretion after consultation with Bank of America or as approved by the Court.

(c)     The Trustee shall have the right, after consultation with Bank of America, to accept or reject any offers on any property in Real Estate Lot A, and any such property may be offered at private sale or public auction.

(d)     The sale of Real Estate Lot A shall not be subject to deed stamps or other excise tax pursuant to 11 U.S.C. § 1146(a).

(e)     Any sale of any property in Real Estate Lot A is subject to Bank of America's right to credit bid.

(f)     In the event Bank of America credit bids on the Millville Real Property, Bank of America agrees to pay into the Liquidating Trust $65,000 for the benefit of Class 3 Claims, subject to Section 9.2(j) of this Plan.

(g)     In the event Bank of America credit bids on the Alachua Real Property, Bank of America agrees to pay into the Liquidating Trust $46,250 for the benefit of Class 3 Claims, subject to Section 9.2(j) of this Plan.

(h)     In the event Bank of America credit bids on the St. Augustine Real Property, Bank of America agrees to pay into the Liquidating Trust $93,750 for the benefit of Class 3 Claims, subject to Section 9.2(j) of this Plan.

(i)     Subject to the payment of Allowed Professional Fee Claims as set forth in Section 2.5(b) of this Plan (including payments to Keen), net proceeds from the sale of any properties included in Real Estate Lot A shall be applied first to Bank of America's Class 1 Claims until paid in full; then split 92.5% to Bank of America's Class 2 Claims, and 7.5% to the Liquidating Trust for the benefit of Class 3 Claims; then, should Bank of America be paid in full on its Class 2 Claims, the remainder to the Liquidating Trust for the benefit of Class 3 Claims.

(j)     In the event the Liquidating Trust receives $500,000 in aggregate for the benefit of Class 3 Claims from (i) the sales of the property in Real Estate Lot A, (ii) the sales of the Salisbury Real Property, (iii) proceeds from the pre-confirmation sales of the operating assets of Hunter Marine Corporation and Silverton Marine Corporation, if any, and (iv) credit bid fees contemplated in this Section 9.2, Bank of America shall not be obligated to pay any additional credit bid fees.  Bank of America shall pay credit bid fees on a Pro Rata basis only to the extent necessary to fund the Liquidating Trust up to $500,000 for the benefit of Class 3 Claims (after

liquidation or other disposition of all real property).  No credit bid fee shall be paid by Bank of America until all real property has been liquidated or otherwise disposed of.

(k)      After the Effective Date, the conveyance or sale of the Palatka Real Property, the Millville Real Property, the Alachua Real Property, the Salisbury Real Property, and the St. Augustine Real Property shall not be subject  to approval by the Court, provided that such sale is in accordance with the terms and conditions of the Plan.

### Section 9.3      Surrender of the Palatka Real Property

On or before the Effective Date, the Debtors will convey the Palatka Real Property to Textron in satisfaction of Textron's Class 4 Claims and upon the Effective Date the automatic stay will be lifted with respect to the Palatka Real Property.  Textron shall have 30 days from the date of surrender of the Palatka Real Property to file a general unsecured deficiency claim which shall be classified as a general unsecured claim and deemed a Class 3 Claim.  The Debtors and the Liquidating Trustee, as appropriate, reserve all rights including the right to object to Textron's deficiency claim.

### Section 9.4      Lease Proceeds

All lease proceeds, if any, from any real property included in the Assets shall be paid to Bank of America to be applied to its Class 2 Claims and shall not vest in the Liquidating Trust, except lease proceeds from the Palatka Real Property which shall be paid to Textron, and lease proceeds from Salisbury Real Property, which shall be paid to SWED.  Any lease payments to Textron or SWED pursuant to this Section shall reduce their respective claims by the amount of such lease payment.

### ARTICLE X.
### RIGHTS OF ACTION

### Section 10.1    Maintenance of Rights of Action

In accordance with 11 U.S.C. § 1123(b)(3), the Debtors transfer and assign all Rights of Action of the Debtors to the Liquidating Trust.  Except as otherwise provided in the Plan, from and after the Effective Date, the Liquidating Trustee shall have the exclusive right, authority and discretion to pursue, enforce, institute, prosecute, abandon, settle, or compromise any and all Rights of Action.  The Liquidating Trustee may settle such Rights of Action without Bankruptcy Court approval (i) if the amount in controversy is less than $150,000; or in all other cases (ii) if the amount in controversy exceeds the amount for which such controversy is to be settled by less than $150,000.

### Section 10.2    Preservation of All Rights of Action Not Expressly Settled or Released

Unless a Right of Action against a Creditor or other entity is expressly and specifically waived, relinquished, released, compromised, or settled pursuant to any Final Order, and notwithstanding confirmation of the Plan and the *res judicata* effect thereof, nothing in the Plan,

the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any Right of Action, or other legal or equitable defense that the Debtors had immediately prior to the commencement of these Chapter 11 Cases, against or with respect to any Claim and the Debtors and Liquidating Trustee expressly preserve such Right of Action for later enforcement by the Liquidating Trustee.

Any entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods, or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may, if appropriate, be the subject of an action, application, motion, objection, or contested matter after the Effective Date, whether or not (i) such entity has filed a proof of claim against the Debtors in these Chapter 11 Cases, (ii) such entity's proof of claim has been the subject of an objection, (iii) such entity's Claim was included in the Debtors' Schedules, or (iv) such entity's scheduled claim has been objected to by the Debtors or has been identified by the Debtors as disputed, contingent, or unliquidated.

### Section 10.3   Permissible Continuation of Actions.

Notwithstanding the rest of this Plan, the Injunction imposed herein shall not apply to prevent the commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtors or any real property in which the Debtors may have an interest; provided, however, that any order entered or judgment, fine, sanction, penalty, declaration, determination, or monetary award assessed against the Debtors in such an action proceeding may not be enforced against the Debtors, the Liquidating Trust, the Liquidating Trustee, and their respective agents, successors, and assigns, that such an award or determination shall not give rise to an Allowed Claim, and that any judgment, fine, sanction, penalty, declaration, determination, award, or other action which affects property of the Debtors, the Liquidating Trust, or the Liquidating Trustee creates personal liability for the agents, successors, and assigns of the Debtors, or creates personal liability for the Liquidating Trust, the Liquidating Trustee, and their respective agents, successors, and assigns, shall be void.  Nothing herein shall prevent the Court from modifying the Injunction at the request of any party, upon notice and a hearing.

## ARTICLE XI.
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### Section 11.1   Prosecution of Objections to Claims

Unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Claimant whose Claim is objected to by the later of (a) one hundred-eighty (180) days after the Effective Date; or (b) one hundred-eighty (180) days after a timely Proof of Claim or request for payment with respect to such Claim is filed; provided, however, that the Liquidating Trustee may seek an extension of such time to object.

### Section 11.2        Estimation of Claims

The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated General Unsecured Claim pursuant to 11 U.S.C. § 502(c) regardless of whether the Debtors or the Liquidating Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.   The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.   In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.   If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

### Section 11.3   Cumulative Remedies

All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.   Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved as provided herein or by any mechanism approved by the Bankruptcy Court.   Until such time as a Claim becomes Allowed, such Claim shall be treated as Disputed for purposes related to allocations and distributions.

### Section 11.4   Allowance of Claims

(a)      <u>Disallowance of Claims</u>: Pursuant to 11 U.S.C. §§ 105 and 502(d), no distributions will be made with respect to Claims that are Disputed or to Claimants from which property is recoverable under 11 U.S.C. §§ 542, 543, 550, 553, 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) (including the Avoidance Actions) until such time as such objection or Right of Action against that Claimant has been settled or resolved by a Final Order, and all sums due to the Debtors are turned over to the Liquidating Trust.   As soon as practicable after the date on which a Claim that is Disputed becomes Allowed, the holder of such newly Allowed Claim will receive all distributions to which it is entitled under the Plan.

(b)      <u>No Distribution Pending Allowance</u>: Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.   Any person who holds both an Allowed Claim and a Claim that is Disputed will receive the appropriate distribution on the Allowed Claim, but will not receive a distribution on the Claim that is Disputed.

(c)      <u>Allowance of Claims</u>: Except as expressly provided for in the Plan, no Claim shall be deemed Allowed by virtue of the Plan, Confirmation Order, or any order of the Bankruptcy Court in these Chapter 11 Cases, unless and until such Claim is Allowed.

## ARTICLE XII.
## PROVISIONS GOVERNING DISTRIBUTIONS

### Section 12.1   Distribution to Creditors

The Liquidating Trustee shall make distributions to holders of Allowed Claims to the extent required by and in accordance with the terms of the Plan net of required reserves and expenses.

### Section 12.2   Claims Allowed as of the Initial Distribution Date

The Liquidating Trustee shall make a distribution on the Initial Distribution Date (or as soon thereafter as is practicable) to all beneficiaries of the Liquidating Trust by virtue of such persons holding Allowed Claims as provided under the Liquidating Trust Agreement unless other treatment is indicated in this Plan.  Distributions on account of Claims that become allowed after the Initial Distribution Date shall be made by the Liquidating Trustee pursuant to the provisions of the Plan and Liquidating Trust Agreement from the reserve set aside by the Liquidating Trustee for Disputed Claims.

### Section 12.3   Disputed Claim Reserve

The Liquidating Trustee shall maintain such reserves, for Disputed Claims and otherwise, as it deems necessary to administer the Liquidating Trust under the terms of the Plan.  In the event that a portion or all of any reserve established by the Liquidating Trustee becomes unnecessary, the funds from such reserve shall be transferred to the Liquidating Trust for distribution to beneficiaries of the Liquidating Trust.

### Section 12.4   Time and Manner of Payments

Any payment in Cash shall be made by check in United States Dollars drawn on a domestic bank.

### Section 12.5   Delivery of Distributions

Subject to the provisions of Bankruptcy Rules 2002(g) and 9010 and except as otherwise agreed with a holder of an Allowed Claim as provided in the Plan, distributions to holders of Allowed Claims shall be made at the address of each such Claimant as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address set forth on proofs of claim filed by such Claimants, or if the Liquidating Trustee has been notified in writing of a change of address.

### Section 12.6   Undeliverable Distributions

(a)     Holding of Undeliverable Distributions:  If any distribution to any Claimant is returned to the Liquidating Trustee as undeliverable, no further distributions shall be made to such Claimant unless and until the Liquidating Trustee is notified, in writing, of such Claimant's then-current address, at which time all missed distributions, to the extent provided under this

Article shall be made to such Claimant without interest.  Subject to Section 11.6(b) of the Plan, undeliverable distributions shall remain in the possession of the Liquidating Trustee until such time as a distribution becomes deliverable.  Nothing contained in the Plan shall require the Liquidating Trustee to attempt to locate any holder of an Allowed Claim.

(b)    Failure to Claim Undeliverable Distributions:  Within ten (10) Business Days after three (3) months following each distribution under the Plan, the Liquidating Trustee may file a list with the Bankruptcy Court setting forth the names and addresses used by the Liquidating Trustee of those Claimants for which distributions have been attempted hereunder and have been returned as undeliverable as of the date thereof, or for which payments have been made by check but which checks have not been negotiated.  Any such Claimant that does not assert its rights pursuant to the Plan to receive a distribution within one (1) month after the filing of such list shall have its Claim for such undeliverable distribution and all future distributions discharged and shall be forever barred from asserting any such Claim against the Bankruptcy Estates, the Debtors, and their respective successors and/or assigns, the Liquidating Trustee, the Liquidating Trust, or the Liquidating Trust Assets.  In such case, all unclaimed distributions shall revert to the Liquidating Trust and be applied in accordance with the terms of the Plan.  All uncashed checks will be subject to and governed by Section 12.8 herein.

## Section 12.7    Compliance with Tax Requirements

To the extent applicable, the Liquidating Trustee in making distributions under the Plan shall comply with all tax withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities and all distributions hereunder shall be subject to such reporting and withholding requirements.  The Debtors shall provide the Liquidating Trustee with all tax information, and shall assist in any tax reporting issues as requested by the Liquidating Trustee, including without limitation, by providing copies of all tax forms in the Debtors' possession related to Claimants.  The Liquidating Trustee may withhold the entire distribution due to any holder of an Allowed Claim until such time as such Claimant provides the Liquidating Trustee with the necessary information to comply with any withholding requirements.  If the Claimant fails to provide the Liquidating Trustee with the necessary information to comply with withholding requirements within six (6) months after the date of the first request by the Liquidating Trustee for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Liquidating Trustee may move to expunge and disallow the claim on 20 days' notice to such Claimant.  Entry of an order pursuant to such motion will forever bar the Claimant from asserting the claim or receiving a distribution on such claim.  If more than one Claimant fails to provide such necessary information, the Liquidating Trustee may make an omnibus motion for the requested relief.  For tax purposes, distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest.

## Section 12.8    Time Bar to Payments

Checks issued by the Liquidating Trustee on account of Allowed Claims shall be null and void if not negotiated within sixty (60) days from and after the date of issuance.  Requests for reissuance of any check shall be made directly to the Liquidating Trustee by the holder of the Allowed Claim with respect to which such check originally was issued.  Any Claim in respect of

such a voided check shall be made on or before the later of: (a) six (6) months following the Distribution Date, or (b) sixty (60) days after the date of issuance of such check. After such date, all claims in respect of voided checks shall be discharged and forever barred and the right to all moneys from the voided checks and any future distributions to such claimants shall revert to the Liquidating Trust and be applied in accordance with the terms of the Plan.

### Section 12.9   Fractional Dollars, *De Minimis* Distributions

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down. The Liquidating Trustee shall not be required to make payments of less than two hundred dollars ($200.00) on account of any Allowed Claim, unless a specific request is made in writing to the Liquidating Trustee. Absent written request, the Liquidating Trustee may retain any such sums and, until the total distribution due to such creditors exceeds $200.00 or until the final distribution is made under the Plan, at which point the Liquidating Trustee shall distribute all sums due such Claimants. In addition, after the Initial Distribution Date, the Liquidating Trustee shall not be required to make any distribution on account of any Claim in the event that the costs of making such distribution payment exceed the amount of such distribution payment, and all cash that otherwise would have been distributed to Claimants holding such *de minimis* claims shall otherwise be distributed in accordance with the terms of the Plan and Liquidating Trust Agreement.

### Section 12.10   Set-Offs and Recoupments

The Liquidating Trustee, as successor to the Debtors, pursuant to 11 U.S.C. § 553 or applicable non-bankruptcy law, may set off and/or recoup against any Allowed Claim against the distributions to be made pursuant to the Plan (before any distribution is made on account of such Claim), the claims and Rights of Action of any nature that the Bankruptcy Estates may hold against the holder of such Allowed Claim. Neither the failure to effect such a set-off nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee or the Bankruptcy Estates of any such Claim or Right of Action that such parties may possess under 11 U.S.C. § 553.

### Section 12.11   Payments and Actions Not Required on Business Days

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or performance of such act may be completed on the next succeeding Business Day and shall be deemed to have been completed as of the required date.

## ARTICLE XIII.
## CONDITIONS PRECEDENT TO
## CONFIRMATION AND EFFECTIVE DATE OF THIS PLAN

### Section 13.1       Conditions Precedent to Confirmation of Plan

Confirmation of the Plan will not occur unless each of the following conditions precedent have occurred or have been waived in writing by the Debtors:

(a)       The Bankruptcy Court shall have approved a Disclosure Statement in form and substance acceptable to the Debtors.

(b)       There is sufficient Cash or other commitment or provision for funding sufficient to pay Allowed Administrative Claims pursuant to this Plan, Allowed Non-Tax Priority Claims, and Allowed Priority Tax Claims in full (or in such lesser amount or different manner as may be agreed to by the Claimant and the Debtors).

(c)       The Confirmation Order shall be approved in form and substance acceptable to the Debtors and Bank of America.

### Section 13.2    Conditions to Effectiveness of Plan

The Effective Date shall not occur unless each of the following conditions precedent has occurred or been waived in writing by the Debtors:

(a)       The Confirmation Order has become a Final Order.  The Debtors and all other parties in interest having possession, custody, or control over Liquidating Trust Assets transfer substantially all Liquidating Trust Assets to the Liquidating Trust.

(b)       The Liquidating Trust has been created pursuant to the terms of the Plan, the Liquidating Trustee has been appointed and approved by the Bankruptcy Court, and the Liquidating Trust Agreement has been executed by the Liquidating Trustee.

(c)       All other actions and documents necessary to implement the Plan shall have been effected and executed.

If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly and properly waived on or before the first Business Day that is one hundred, eighty (180) days after the Confirmation Date, or such later date as agreed to by the Debtors, the Confirmation Order shall be deemed vacated and the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims.

### Section 13.3    Waiver of Conditions Precedent.

To the extent practicable and legally permissible, each of the conditions in Section 13.2, other than 13.2(a), may be waived, in whole or in part, by the Debtors.

### Section 13.4    Nonoccurrence of Effective Date.

If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly and properly waived on or before the first Business Day that is one hundred, eighty (180) days after the Confirmation Date, or such later date as agreed to by the Debtors, the Confirmation Order shall be deemed vacated and the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims.

## ARTICLE XIV.
## RETENTION OF JURISDICTION

### Section 14.1    Retention of Jurisdiction

The Bankruptcy Court shall retain and have subject matter jurisdiction over any matter arising under the Bankruptcy Code, or arising in or related to these Chapter 11 Cases and the Plan and for the following purposes:

(a)    to resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtors were or are a party or with respect to which the Debtors may be liable, and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(b)    to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, transactions, and other agreements or documents created in connection with the Plan;

(c)    to determine any and all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, are available to the Bankruptcy Estates and that may be instituted by the Liquidating Trustee after the Effective Date (to the extent such venue is selected by the Liquidating Trustee, including, but not limited to any claims or Rights of Action arising under 11 U.S.C. §§ 542, 543, 544, 545, 547, 548, 549, or 553(b));

(d)    to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(e)    to hear and determine any timely objections to Claims, both before and after the Effective Date, including any objections to the classification of any Claim, and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority of, or secured or unsecured status of any Claim, in whole or in part;

(f)    to enforce the Liquidating Trustee's interest in the Cash and the Liquidating Trust Assets, and the Liquidating Trustee's right to pursue objections to Claims, Rights of Action, and all other rights of the Liquidating Trustee to the Liquidating Trust Assets;

(g)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(h)    to issue orders in aid of execution of the provisions of the Plan to the extent authorized by 11 U.S.C. § 1142, including, but not limited to, orders interpreting, enforcing, or clarifying the provisions thereof;

(i)     to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order to the extent authorized by the Bankruptcy Code;

(j)     to hear and determine all applications for allowance of compensation for services rendered and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan incurred prior to the Effective Date;

(k)     to hear and determine any and all objections to and proceedings involving the allowance, estimation, classification, and subordination of Claims;

(l)     to hear and determine all suits, controversies and disputes arising in connection with or relating to the Plan, or any orders of the Bankruptcy Court in the Chapter 11 Cases entered on or before the Effective Date, the interpretation, implementation, enforcement or consummation of the Plan, or any orders of the Bankruptcy Court in the Chapter 11 Cases entered on or before the Confirmation Date, or the extent of any entity's obligations incurred in connection with or released under the Plan;

(m)     to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation or enforcement of the Plan;

(n)     to enforce all orders, judgments, and rulings entered in connection with the Chapter 11 Cases and to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Asset Purchase Agreement, the Confirmation Order, or the Liquidating Trust Agreement;

(o)     to enter any order, including injunctions necessary to enforce the title, rights, and powers of the Debtors or the Liquidating Trustee and to impose such limitations, restrictions, terms, and conditions on such title, rights, and powers as the Bankruptcy Court may deem necessary or appropriate, the Liquidating Trust Agreement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement;

(p)     to hear and determine matters concerning state, local, and federal taxes in accordance with 11 U.S.C. §§ 346, 505, and 1146;

(q)     to hear any other matter for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code, including the allowance or disallowance and classification of late-filed proofs of claim in accordance with Bankruptcy Rule 9006(b);

(r)     to enter a Final Decree closing these Chapter 11 Cases;

(s)     to resolve any matters that may arise in connection with the Liquidating Trust or the Liquidating Trust Agreement;

(t)     to determine and hear any actions or controversies by or against the Liquidating Trustee;

(u)     to hear and determine any matter relating to or arising out of any action or act taken or omission in connection with or related to the formulation, preparation, dissemination, implementation, administration, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, or any other act or omission taken or to be taken in

connection with the Chapter 11 Cases commenced against any party in the Chapter 11 Cases, including, without limitation, the Liquidating Trustee, the Debtors, the Committee, and their respective current and former directors and officers, members, agents, advisors, attorneys, advisors, and other professionals and Entities employed pursuant to 11 U.S.C. §§ 327 and 1103;

(v)    to adjudicate all Rights of Action to recover all Assets and properties of the Debtors and Bankruptcy Estates wherever located;

(w)    to hear and determine any and all objections to payments under the Plan;

(x)    to adjudicate all claims or controversies arising out of any purchases, sales, or contracts made or undertaken by the Debtors during the pendency of the Chapter 11 Cases; and

(y)    to enforce the permanent injunction created by the Confirmation Order and Section 15.3 hereof.

## ARTICLE XV.
## MISCELLANEOUS PROVISIONS

### Section 15.1   Modification of Plan

(a)    _Pre-Confirmation Modification_.  At any time before the Confirmation Date, the Plan or Plan Supplement may be modified by the Debtors, with notice to the Committee and Bank of America, provided that the Plan, as modified, does not fail to meet the requirements of 11 U.S.C. §§ 1122 and 1123.  In the event that there is a modification of the Plan, then the Plan as modified shall become the Plan.

(b)    _Pre-Consummation Modifications_.  At any time after the Confirmation Date, but before substantial consummation of the Plan, the Plan or Plan Supplement may be modified by the Debtors, with notice to the Committee and Bank of America, upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of 11 U.S.C. §§ 1122 and 1123.  The Plan, as modified under this section, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under 11 U.S.C. § 1129.

(c)    _Non-Material Modifications_.  At any time after the Confirmation Date, the Debtors may, with notice to the Committee and written consent from Bank of America, which consent cannot be unreasonably withheld, without approval of the Court, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or Plan Supplement or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent, and effect of this Plan, provided that they do not materially or adversely affect the interests of creditors or other entities.

(d)    _Events of Default_.  The occurrence of any of the following shall constitute an event of default under the Plan (each, an "Event of Default");

(i)    The Liquidating Trustee's failure to pay fully when due any payment required to be made in accordance with the provisions of this Plan, which failure remains uncured for a period of five (5) days after receipt of written notice;

(ii)    The Liquidating Trustee's failure to perform or observe any other term or provision set forth in this Plan, which failure remains uncured for a period of fifteen (15) days after receipt of written notice;

(iii)    The failure of the Debtors and/or the Liquidating Trustee to comply with the terms of the Liquidating Trust Agreement, which failure remains uncured for a period of five (5) days after receipt of written notice;

(iv)    The Effective Date does not occur within sixty (60) days of the Confirmation Date;

(v)    The Liquidating Trustee's failure to maintain insurance on the Alachua Real Property, the St. Augustine Real Property, or the Millville Real Property acceptable to Bank of America; and

(vi)    All of the real estate Assets are not sold or otherwise conveyed out of the Liquidating Trust, in accordance with the terms and conditions contained herein, on or before April 1, 2013.

(e)    <u>Rights and Remedies Upon an Event of Default</u>.  Upon occurrence of an Event of Default under the Plan, the automatic stay on all collateral for the Bank of America loans shall automatically terminate and Bank of America shall have the right to exercise its state court remedies, all without further authorization or order of this Court, including the right to foreclose its liens on the Alachua Real Property, the St. Augustine Real Property, and the Millville Real Property.

(f)    <u>Notice of Event of Default</u>.  The Liquidating Trustee shall give Bank of America immediate notice of the occurrence of any Event of Default under this Plan.

## Section 15.2    Revocation or Withdrawal

The Plan may be revoked or withdrawn by the Debtors prior to the Confirmation Date.  If the Plan is revoked or withdrawn prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by the Debtors or the Bankruptcy Estates, or any other entity, or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtors.

## Section 15.3        Injunction

**All Entities who have held, hold, or may hold Claims or Equity Interests are permanently enjoined, from and after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest; (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any encumbrance of any kind; and (iv) asserting any right of setoff, subrogation, or**

recoupment of any kind against each of the Liquidating Trust, the Liquidating Trust Assets, the Liquidating Trustee, and all professionals retained by the Liquidating Trust.

### Section 15.4   Discharge

As provided in 11 U.S.C. § 1141(d)(3), the Plan does **not** grant the Debtors a discharge. Notwithstanding the foregoing, except as otherwise provided herein:  (1) the rights afforded in the Plan and the treatment of all Claims shall be in exchange for and in complete satisfaction, discharge, and release of such Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Filing Date, against the Debtors, the Liquidating Trust, the Liquidating Trustee, or any of their Assets or properties; and (2) all Entities shall be precluded from asserting against the Debtors, the Liquidating Trust, the Liquidating Trustee, or any of their Assets any other or further Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred before the Confirmation Date, except as otherwise provided in the Plan.

### Section 15.5   Term of Existing Injunctions or Stays

Unless otherwise provided, all injunctions or stays provided for in these Chapter 11 Cases pursuant to 11 U.S.C. §§ 105, 362, or 524, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, and thereafter shall be annulled.

### Section 15.6   Exculpation and Limitation of Liability

(a)   **NONE OF THE DEBTORS, THE LIQUIDATING TRUST, THE LIQUIDATING TRUSTEE, OR THE COMMITTEE, OR BANK OF AMERICA, NOR ANY OF THEIR RESPECTIVE PRESENT OF FORMER MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, ADVISORS, AGENTS OR ATTORNEYS, OR OTHER PROFESSIONALS SHALL HAVE OR INCUR ANY LIABILITY TO ANY CLAIMANT OR HOLDER OF AN EQUITY INTEREST, OR ANY OTHER PARTY IN INTEREST, OR ANY OF THEIR RESPECTIVE AGENTS, EMPLOYEES, REPRESENTATIVES, FINANCIAL ADVISORS, ATTORNEYS, PROFESSIONALS OR AFFILIATES, OR ANY OF THEIR SUCCESSORS OR ASSIGNS, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THESE CHAPTER 11 CASES, INCLUDING, WITHOUT LIMITATION, THE DEBTORS' OPERATIONS, THE FILING OF THESE CHAPTER 11 CASES, THE ADMINISTRATION OF THE DEBTORS' CASH, ASSETS, REAL, AND PERSONAL PROPERTY, THE ASSET PURCHASE AGREEMENT, THE DIP ORDER, THE FORMULATING, NEGOTIATING, OR IMPLEMENTING OF THE PLAN, THE SOLICITATION OF ACCEPTANCES OF THE PLAN, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THESE CHAPTER 11 CASES, OR THE PLAN, OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN.**

(b)   Notwithstanding any other provision of the Plan, no holder of a Claim or Equity Interest, no other party in interest, none of their respective agents, employees, representatives,

financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any Right of Action against the Liquidating Trust, the Liquidating Trustee, the Debtors, the Committee, Bank of America, or any of their respective present or former members, officers, directors, shareholders, employees, agents, advisors or attorneys, or professionals for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, formulating, negotiating, or implementing the Plan, the consummation of the Plan, the confirmation of the Plan, or the administration of the Plan or the property to be distributed under the Plan.

(c)     Nothing in this section shall be construed (i) to exculpate any entity from fraud, gross negligence, willful misconduct, malpractice, criminal conduct, misuse of confidential information that causes damages, or *ultra vires* acts, or (ii) to limit the liability of the professionals of the Debtors, the Committee, Bank of America, and the Liquidating Trust, to their respective clients pursuant to applicable rules of professional conduct.

(d)     Notwithstanding anything contained herein to the contrary, nothing herein or otherwise shall be deemed a waiver, release, discharge, or limitation upon any Assets and/or Rights of Action held by or to be transferred hereunder to the Liquidating Trust, or the ability of the Liquidating Trustee to prosecute, liquidate, or settle such Liquidating Trust Assets, Avoidance Actions, and Rights of Action.

### Section 15.7    Release

Holders of Claims that vote in favor of the Plan voluntarily and consensually release the Debtors, the Liquidating Trust, the Liquidating Trustee, the Committee, Bank of America, and John Luhrs and Warren Luhrs (each in his capacity as shareholder and lender), and any of their respective present or former members, officers, directors, shareholders, employees, agents, advisors or attorneys, or professionals from all claims and causes of action held by such Claim Holder to the extent such claim or cause of action relates to the Debtors, the bankruptcy cases, the Plan, the Disclosure Statement, or the negotiation or consummation of the transactions contemplated by the DIP Order, the Plan, or the Disclosure Statement, except for liability arising from willful misconduct, gross negligence, or fraud.  All Entities shall be enjoined from filing or otherwise asserting any claim or cause of action that is the subject of this Article under the Plan.

### Section 15.8    Subordination and Release of John and Warren Luhrs' Claims

John Luhrs and Warren Luhrs each waives any and all liens and security interests on real property where each has mortgages in these Chapter 11 Cases, and subordinates any Claims, including unsecured claims, to the Claims of general unsecured creditors in Class 3.

### Section 15.9    Section 1146 Exception

Pursuant to 11 U.S.C. § 1146(c), the issuance, transfer, or exchange of any security under the Plan, or the making or delivery of an instrument of transfer under the Plan, may not be taxed under any law imposing a stamp tax or similar tax.

### Section 15.10  Waiver of Taxes

The making or delivery of an instrument of transfer under this Plan, including, but not limited to, the issuance, transfer or exchange of any security under this Plan, may not be taxed under any law imposing a stamp or similar tax.

### Section 15.11  Evidence.

In the event this Plan does not take effect for whatever reason, nothing herein shall constitute an admission or denial with respect to whether any of the Claims held by any party are (a) entitled to allowance or disallowance, (b) secured or unsecured, (c) entitled to priority treatment under the Bankruptcy Code, (d) liable to subordination, or (e) liable for any claims or Rights of Action, including but not limited to claims under 11 U.S.C. §§  506, 510, 522, 542, 543, 544, 545, 547, 548, 549, and/or 550.

### Section 15.12  Severability

If the Bankruptcy Court determines that any provision of the Plan is unenforceable either on its face or as applied to any Claim transaction, the Debtors may modify the Plan in accordance with Section 15.1 of the Plan so that such provision shall not be applicable to the holder of any Claim or Equity Interest.  Such a determination of unenforceability shall not (i) limit or effect the enforceability and operative effect of any other provision of the Plan, or (ii) require the re-solicitation of any acceptance or rejection of the Plan.

### Section 15.13  Binding Effect

The rights, benefits, and obligations conferred on any person by the Plan shall be binding upon, and inure of the benefit of the executors, successors, heirs, and assigns of and any persons claiming an interest in any Asset through such person.

### Section 15.14  Notices

Any notices, requests, and demands to or upon the Debtors, the Committee, or the Liquidating Trustee, to be effective, shall be in writing, including by facsimile transmission, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered to the following or, in the case of notice by facsimile transmission, when received by the following and telephonically confirmed, addressed as follows or to such other addresses as filed with the Bankruptcy Court.

#### If to the Debtors:

Robert M. Hirsh, Esq.
George P. Angelich, Esq.
Arent Fox LLP
1675 Broadway
New York, New York 10019

NYC/677679.13

Telephone:  (212) 484-3900
Facsimile:  (212) 484-3990

**If to the Liquidating Trustee:**

[●]
[●]
[●]
[●]
Telephone: [●]
Facsimile:  [●]

**If to the Committee:**

Jeffrey D. Prol, Esq.
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, NJ 07068
Telephone: (973) 597-2490
Facsimile: (973) 597-2491

**If to Bank of America:**

Scott P. Vaughn, Esq.
McGuireWoods LLP
201 North Tryon Street
Charlotte, NC 28202
Telephone: (704) 343-2066
Facsimile: (704) 444-8778

**If to the US Trustee:**

Mitchell B. Hausman, Esq.
Office of the United States Trustee
One Newark Center
Suite 2100
Newark, New Jersey 07102
Telephone:  (973) 645-3660
Facsimile:  [●]

**Section 15.15  Right to be Heard**

Each of the Liquidating Trustee, the Debtors, and Bank of America, and the Committee shall have the right to bring any dispute between them to the Bankruptcy Court for adjudication.

### Section 15.16  Closing of Case

The Liquidating Trustee shall, promptly upon the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to obtain a Final Decree closing the Chapter 11 Cases.

### Section 15.17  Section Headings

The section headings contained in the Plan and the Disclosure Statement are for reference purposes only and shall not affect the meaning or interpretation of the Plan.

### Section 15.18  Continuing Viability of Other Orders/Agreements

Except to the extent expressly modified by the Plan or the Asset Purchase Agreement, (i) all Final Orders previously entered by the Bankruptcy Court, and (ii) any agreements between any of the Committee, Bank of America, the Debtors, and their creditors shall continue in full force and effect.

### Section 15.19  Entire Agreement

Except to the extent incorporated herein by reference, the Plan supersedes all prior discussions, understandings, agreements, and documents pertaining or relating to any subject matter of the Plan.  In the event of a conflict between any of the provisions of the Plan, the Disclosure Statement, the Sale Order, or the Asset Purchase Agreement, the terms of the Plan shall govern, followed by the Disclosure Statement, the Sale Order, and lastly the Asset Purchase Agreement.

### Section 15.20  Governing Law

Except to the extent that the Bankruptcy Code is inapplicable, the rights, duties, and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of New Jersey.

### Section 15.21  Failure of Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of these Chapter 11 Cases, including any of the matters set forth in the Plan, the Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

Dated:   New York, New York
         September 24, 2012

                     ARENT FOX LLP

             By   */s/ Robert M. Hirsh*_____
                    Robert M. Hirsh
                    George P. Angelich
                    1675 Broadway
                    New York, NY 10019
                    (212) 484-3900

                    *Attorneys for the Debtors*